IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **SHENZHEN YUNQINGWEICHUANG TECHNOLOGY CO., LTD.,** | |
| Plaintiff, | Civil Case No.:  2:25-cv-472 |
| v. | JURY TRIAL DEMANDED |
| **SICDDDE,** *ET AL.,* | **FILED UNDER SEAL** |
| Defendants. | |

## COMPLAINT

Plaintiff Shenzhen Yunqingweichuang Technology Co., Ltd. ("Plaintiff") hereby sues

Defendants, Sicddde and the other individuals, partnerships, and unincorporated associations as

delineated in **Schedule A** hereto, (collectively "Defendants"), alleging as follows:

## INTRODUCTION

1.    This action has been filed by Plaintiff to combat e-commerce store operators who

trade upon Plaintiff's reputation and goodwill by offering for sale and/or selling unauthorized and

unlicensed products, specifically lighting products, using infringing versions of Plaintiff's

federally registered patent US D991,533 ("Plaintiff's Patent"), infringing and counterfeit versions

of Plaintiff's federally registered trademark ELYONA (Reg. No. 7,420,879) ("Plaintiff's Mark"),

and/or infringing and derivative versions of Plaintiff's federally registered copyright VA 2-434-

881 ("Plaintiff's Copyright") (collectively the "Infringing Products"). Defendants create e-

commerce stores operating under one or more Seller Aliases that are advertising, offering for sale,

1

and/or selling Infringing Products to unknowing consumers. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identity and the full scope and interworking of their infringing operation.

2.     Plaintiff is forced to file this action to combat Defendants' infringement and counterfeiting of its federally registered patent, trademark, and copyright as well as to protect unknowing consumers from purchasing Infringing Products over the Internet.

3.     Plaintiff has been and continues to be irreparably damaged through loss of market share, loss of future sales, inability to realize a return on investment, consumer confusion, diminished goodwill and brand confidence, damage to Plaintiff's reputation, damage to Plaintiff's creative content, and loss of exclusivity in its valuable patent, trademark, and copyright rights as a result of Defendants' actions and seeks injunctive and monetary relief.

## **PARTIES**

4.     Plaintiff was established in August 2014 and is headquartered at 611, Block E, Huafeng Creative Place, Hangcheng, Ind. Zone, Xixiang, Baoan, Shenzhen, China 518000.

5.     Plaintiff is owner of United States Patent No. US D991,533, entitled "Chandelier" ("Plaintiff's Patent"). *See* Exhibit A.

6.     Plaintiff owns United States trademark ELYONA (Reg. No. 7,420,879) ("Plaintiff's Mark"), and Plaintiff's Mark has been continuously used in commerce since at least July 28, 2020. *See* Exhibit B.

7.     Plaintiff is the author and the owner of the images protected by VA 2-434-881 ("Plaintiff's Copyright"), which includes images of products protected by Plaintiff's Patent. *See* Exhibit C.

8.      As a result of its long-standing use, Plaintiff also owns common law trademark rights in its ELYONA trademark. Plaintiff's products typically include at least Plaintiff's Mark. Plaintiff uses its trademark in connection with the marketing of Plaintiff's products, including products protected by Plaintiff's Patent and sold under images protected by Plaintiff's Copyright.

9.      Plaintiff's Mark covers IC 20, including "Armchairs; Nightstands; Shelves; Stools; Bedroom furniture; Coat racks; Dining chairs; Dog beds; Pet furniture; Shelves for books; Side tables; Storage and organization systems comprising shelves, drawers, cupboards, baskets and clothes rods, sold as a unit; Storage shelves."

10.      The ELYONA brand centers on the philosophy of "Return to Nature, Embrace a Sustainable Lifestyle," incorporating natural solid wood into lighting design. The ELYONA brand was born from a passion for eco-consciousness and high-aesthetic home décor.

11.      Plaintiff's products, including products protected by Plaintiff's Patent, and brand inspiration comes from nature's raw beauty and modern home artistry. By blending wood's natural textures, the interplay of light and shadow, and minimalist design philosophy, Plaintiff brings warmth and artistic sophistication into modern spaces.

12.      Plaintiff is committed to providing eco-friendly, high-quality, and sustainable products. Using FSC-certified renewable solid wood, advanced woodworking techniques, and non-toxic finishes, Plaintiff ensures their products, including products protected by Plaintiff's Patent, are beautiful, durable, and aligned with green standards—offering a healthy and safe lighting experience.

13.      Through high-aesthetic design and eco-friendly innovation, Plaintiff's mission is to create biodegradable solid wood lighting to deliver artistic and sustainable illumination solutions, ensuring every lamp becomes an artwork in daily life.

14.    Plaintiff's vision is to become a globally leading solid wood lighting brand, pioneering green lighting trends where environmental responsibility and design excellence coexist, empowering users worldwide to embrace a refined and sustainable lifestyle.

15.    Plaintiff specializes in designing and selling high-aesthetic, biodegradable solid wood lighting, including products protected by Plaintiff's Patent, sold under Plaintiff's Mark, and captured in the images protected by Plaintiff's Copyright. Plaintiff's products feature eco-friendly degradable materials, unique craftsmanship, a blend of modern and natural aesthetics, durability, and sustainability. Drawing inspiration from nature's raw beauty and modern home artistry, Plaintiff aims to satisfy customers' pursuit of high-quality lighting, sustainable living, and artistic elegance.

16.    Plaintiff's core clientele includes quality-driven, environmentally aware consumers—such as designers, high-end home enthusiasts, eco-advocates, and individuals seeking distinctive aesthetics and sustainable lighting solutions. Whether for home decoration, commercial spaces, or enhancing artistic ambiance, Plaintiff's products, including the products protected under Plaintiff's Patent, are an ideal choice.

17.    With over a decade of history and a team of more than 100 professionals, Plaintiff has experienced overseas designers and production teams. Plaintiff operates R&D centers and production bases domestically and internationally, supported by efficient supply chains and global e-commerce platforms to ensure excellent product quality and customer service.

18.    Plaintiff's main sales channels include major e-commerce platforms like Amazon and global offline retail stores, providing a seamless purchasing experience worldwide. Plaintiff utilizes these sales channels for products protected under Plaintiff's Patent, sold under Plaintiff's Mark, and in many cases, utilizing the images protected by Plaintiff's Copyright.

19.    Under this model, Plaintiff promotes and sells the product protected by the Plaintiff's Patent and sells it under Plaintiff's Mark, and in many cases utilizing the images protected by Plaintiff's Copyright, to the United States markets. Under this model, Plaintiff's images protected by Plaintiff's Copyright have been displayed, where Defendants has access thereto.

20.    Plaintiff invests heavily in product and brand development through advertising campaigns and event planning to increase product and brand visibility. Plaintiff undertakes continuous improvement efforts of product pages, listening to customer feedback that further enhances customer satisfaction and loyalty. Plaintiff has significantly invested in Plaintiff's Patent, including design, development, protection, and promotion thereof. Plaintiff has significantly invested in Plaintiff's Mark, including development of goodwill, protection, and promotion thereof. Plaintiff has significantly invested in Plaintiff's Copyright, including creation, protection, and promotion thereof.

21.    Plaintiff prioritizes intellectual property protection by applying for design and invention patents, along with protection of its images of its products and brand, to address potential infringements, such as counterfeiting and false advertising.

22.    The above U.S. registrations for the Plaintiff's Patent, Plaintiff's Mark, and Plaintiff's Copyright are valid, subsisting, and in full force and effect. *See* Exhibits A-C.

23.    The registration for Plaintiff's Mark constitutes *prima facie* evidence of its validity and of Plaintiff's exclusive right to use Plaintiff's Mark pursuant to 15 U.S.C. § 1057(b). Plaintiff's Mark has been used continuously by Plaintiff for a long duration, and has never been abandoned. Plaintiff's Mark is distinctive and identifies merchandise as goods from Plaintiff.

24.    The registration for Plaintiff's Patent constitutes *prima facie* evidence of its validity.

25.    The registration for Plaintiff's Copyright constitutes *prima facie* evidence of its validity pursuant to 17 U.S.C. § 410.

26.    Plaintiff's Mark is distinctive when applied to the Plaintiff's products, signifying to the purchaser that the products come from Plaintiff and are manufactured to Plaintiff's quality standards. Plaintiff has ensured that products bearing Plaintiff's Mark are manufactured to the highest quality standards.

27.    The innovative marketing and product designs of Plaintiff's products, including products protected under Plaintiff's Patent, have enabled the Plaintiff brand to achieve widespread recognition. The widespread recognition, outstanding reputation, and significant goodwill associated with the Plaintiff brand have made Plaintiff's Mark an invaluable asset of Plaintiff.

28.    Plaintiff has expended substantial time, money, and other resources in producing, advertising, and otherwise promoting the products covered by the Plaintiff's Patent, Plaintiff's Mark, and utilizing the images protected by Plaintiff's Copyright. Over time, Plaintiff has invested heavily in the products covered by Plaintiff's Patent, Plaintiff's Mark, and utilizing the images covered by Plaintiff's Copyright.

29.    Plaintiff's products protected by Plaintiff's Patent quickly won market recognition due to its excellent performance, user-friendly and innovative design, and high-quality user experience.

30.    Plaintiff's products protected by the Plaintiff's Patent, and sold under Plaintiff's Mark and sold and advertised with images protected by Plaintiff's Copyright, have become recognized by consumers as high-quality products sourced from Plaintiff.

31.    Over the past three years, Plaintiff has achieved substantial growth, with revenue rising from $500,000 to $2.5 million, reflecting market recognition and robust product and brand development.

32.    Plaintiff has become aware of counterfeit and inferior products, copying Plaintiff's Patent design, utilizing Plaintiff's Mark, and/or utilizing images protected by Plaintiff's Copyright. The counterfeiting and infringement cause Plaintiff quarterly losses of at least $500,000.00. Based on these quarterly losses, each Defendant as delineated on Schedule A has sold at least $95,000.00 worth of Infringing Products.

33.    Plaintiff filed this action to combat these Seller Aliases listed on Schedule A who are harming Plaintiff by offering to sell, selling, and shipping unlicensed products that infringe and counterfeit Plaintiff's Patent, Plaintiff's Mark, and Plaintiff's Copyright.

34.    This infringing behavior by Defendants severely impact Plaintiff's patent, trademark, and copyright rights and undermines the fair competition environment in the market. The sales of Plaintiff's products protected by the Plaintiff's Patent and Plaintiff's Mark and Plaintiff's Copyright have dropped significantly and Plaintiff's market share has been illegally eroded.

35.    The infringing behavior of these Seller Aliases has diminished Plaintiff's patent, trademark, and copyright rights and resulted in loss of exclusivity. Plaintiff has not been able to realize the return of investment in the products protected by the Plaintiff's Patent, Plaintiff's Mark, and Plaintiff's Copyright.

36.    Plaintiff has lost profit, market share, sales volume, marketplace rankings and visibility, control over the rights in the claimed invention, control of its creative content and mark, reputation, associated goodwill, and ability to exploit the protected invention, mark, and images.

37.    Plaintiff has not entered a contract with or licensing agreement with Defendants for the Plaintiff's Patent, Plaintiff's Mark, or Plaintiff's Copyright.

38.    Plaintiff filed this action to combat these Seller Aliases' "swarm of attacks" on Plaintiff's patent, trademark, and copyright rights because filing individual causes of action against each infringer and counterfeiter ignores the form of harm Plaintiff faces.

39.    Defendants are anonymous partnerships, individuals, and/or unincorporated associations who target sales to Pennsylvania residents by setting up and operating various "storefronts" under aliases via online retail websites accepting U.S. Dollars. Defendants target Pennsylvania consumers by selling, offering to sell, and/or shipping products that infringe the Plaintiff's Patent, Plaintiff's Mark, and/or Plaintiff's Copyright.

40.    Based on the Seller Alias names and limited available information, Defendants reside and operate in the People's Republic of China or other foreign jurisdictions with lenient intellectual property enforcement systems or redistribute products from the same or similar sources in those locations. Aa a result, Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

41.    Upon information and belief, Defendants either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A. Through fictitious Seller Aliases and the anonymity allowed by marketplace platforms, Defendants purposely conceal their identity and the full scope of their operations, making it virtually impossible for Plaintiff to learn Defendants' true identity and the scope of their infringing network operations.

42.    At present, Defendants can only be identified through their storefronts' names and other limited publicly available information. No credible information regarding Defendants'

8

physical addresses is provided. Plaintiff will voluntarily amend its Complaint as needed if Defendants provide additional credible information regarding their identity and location.

## DEFENDANTS' INFRINGING CONDUCT

43.    Third party online platforms do not adequately subject sellers to verification and confirmation of their identities and products, allowing infringers to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit E**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020). "At least some e-commerce platforms, little identifying information is necessary for [an infringer] to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary." **Exhibit F**, *Combating Trafficking in Counterfeit and Pirated Goods* prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans. Because these online platforms generally do not require a seller to identify the underlying business entity, infringers can have many different profiles that can appear unrelated even though they are commonly owned and operated. *Id.* at 39.

44.    E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their interconnected e-commerce operations.

45.    The e-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars via credit cards, Alipay, Amazon Pay, and/or PayPal. The e-commerce stores operating under the Seller Aliases include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer of Plaintiff's Patent

products, products sold under Plaintiff's Mark, and products utilizing the images protected by Plaintiff's Copyright.

46.    E-commerce store operators like Defendants regularly register new seller aliases for the purpose of offering for sale and selling Infringing Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the scope of their infringing operations. Such tactics help Defendants avoid being shut down. Even after being shut down through enforcement efforts, such e-commerce store operators may conveniently register another storefront under another seller alias and continue to sell the Infringing Products.

47.    Defendants use different fake names and payment accounts to keep selling despite Plaintiff's actions. They also have bank accounts outside this Court's reach and may move money there to avoid paying any monetary judgment to Plaintiff. In fact, financial records from similar cases show that offshore sellers frequently transfer money from U.S. accounts to foreign ones on a regular basis to avoid paying any judgment ordered by a court of law.

48.    Upon information and belief, Defendants are in communication with one another via WeChat and QQ.com chat rooms and through websites such as sellerdefense.cn, kaidianyo.com, and kuajingvs.com, that provide litigation specific content to warn anonymous seller alias networks of upcoming lawsuits against their many respective product listings.

49.    Even though Defendants operate under multiple fictitious Seller Aliases, the e-commerce stores operating under the Seller Aliases share unique identifiers establishing a logical relationship, such as templates with common design elements that intentionally omit any contact information, the same registration patterns, the same accepted payment methods, the same check-out methods, the same keywords and titles, the same product descriptions, the same

10

advertising tactics, the same or similar images and videos, including images protected by Plaintiff's Copyright, similarities in pricing and quantities, and/or the same incorrect grammar and misspellings.

50.    Defendants' Infringing Products were manufactured by and come from a common source based on the same irregularities and virtual identicality of each of Defendants' products, further establishing a logical relationship amongst Defendants.

51.    Each Defendant, in a virtually identical manner, attempts to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their operation, utilizing fictitious Seller Aliases and providing no further identifying information, further establishing a logical relationship amongst Defendants.

52.    Defendants are making, using, offering for sale and/or selling of the same accused product, further establishing a logical relationship amongst Defendants. *See* **Exhibit D**.

53.    Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Infringing Products in the same transaction, occurrence, or series of transactions or occurrences. Alternatively, Plaintiff asserts any right to relief against Defendants for the infringement of the Plaintiff's Patent, Plaintiff's Mark, and Plaintiff's Copyright jointly or severally.

54.    All Defendants take advantage of a set of circumstances the anonymity and mass reach the internet affords to sell counterfeit and infringing goods across international borders and violate Plaintiffs' intellectual property rights with impunity. All Defendants can easily and quickly transfer or conceal their funds in their use payment and financial accounts to avoid detection and liability in the event that the Plaintiff's infringing efforts are discovered, or Plaintiff obtains a monetary award. All Defendants understand that their ability to profit through anonymous internet

stores is enhanced as their numbers increase, even though they may not all engage in direct communication or coordination.

55.     The natural and intended byproduct of Defendants' logically related actions is the erosion and destruction of the goodwill associated with Plaintiffs' intellectual property rights and the destruction of the legitimate market sector in which it operates.

56.     The e-commerce stores operating under the Seller Aliases offer to sell, and stand ready, willing, and able to, and upon information and belief do, sell and ship Infringing Products to the United States, including Pennsylvania. *See* **Exhibit D**.

57.     Questions of fact common to all Defendants will arise inherently do to the identical anonymous nature and foreign status of Defendants – requiring the same methods to investigate, uncover, and collect evidence about infringing activity, based upon Defendants selling the same Infringing Products, including utilizing the same or substantially similar infringing products, counterfeit marks, and infringing images – requiring the same legal and factual infringement analysis.

58.     Defendants' use of Plaintiff's Patent, Plaintiff's Mark, and/or Plaintiff's Copyright in connection with the advertising, distribution, offering for sale, and sale of Infringing Products, including the sale of Infringing Products into Pennsylvania, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

## JURISDICTION AND VENUE

59.     This is an action for infringement of Plaintiff's Patent, Plaintiff's Mark, and Plaintiff's Copyright arising under 35 U.S.C. §§ 271(a), 281, 284 – 85, 15 U.S.C. § 1051, et seq., 15 U.S. Code § 1114, and the Copyright Act of 1976, Title 17 U.S.C., §§ 101, et seq., respectively.

60.    This Court has original subject matter jurisdiction over this claim under 28 U.S.C. §1331 and §1338.

61.    Personal jurisdiction is proper because Defendants directly target consumers in the United States, including in Pennsylvania, through at least the fully interactive commercial Internet stores operating under the Seller Aliases, where Defendants advertise, display, offer to sell, and stand ready, willing, and able to, and upon information and belief do, sell and ship Infringing Products to residents within the Western District of Pennsylvania. *See* **Exhibit D**. As a result, each Defendant has purposefully availed themselves of the privilege of conducting business in the forum state or purposefully directed their patent, trademark, and copyright infringement activities at the state; Plaintiff's injuries stems from the Defendants' forum-related activities of offering to sell, selling, and shipping Infringing Products to the forum-state; and the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice.

62.    Pennsylvania also authorizes personal jurisdiction over the Defendants pursuant to 42 Pa. Cons. Stat. § 5322 (a). Upon information and belief, Defendants were and/or are systematically directing or targeting their business activities at consumers in the United States, including Pennsylvania, through Internet platforms with such as Amazon.com, eBay.com, and/or Walmart under the Seller Aliases, through which consumers in the United States, including Pennsylvania, can and do view Defendants' Infringing Products listings, communicate with Defendants regarding their respective Infringing Products, place orders for Defendants' Infringing Products, and ship Defendants' Infringing Products to United States addresses, including Pennsylvania. *See* **Exhibit D**. As discussed above, the level of interactivity is high, where consumers of Pennsylvania can: communicate to Defendants about Infringing Products, view the Infringing Products, purchase the Infringing Products, and ship the Infringing Products to their

respective Pennsylvania addresses. Defendants, through anonymous Seller Aliases, utilize Amazon.com and other marketplace platforms for the sole purpose of conducting business transactions, as described above. The Internet webpages owned and operated by Defendants, as described above, are purely commercial in nature. The level of interactivity of these marketplace platform listings owned and operated by Defendants are extremely high and establish regular business with the U.S. and Pennsylvania, as described above.

63.    In addition, personal jurisdiction is proper pursuant to Federal Rule of Civil Procedure 4(k)(2), where "a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." Based on the limited information found on Defendants' Infringing Product listings and based on the Seller Aliases names of foreign origin, each of the Defendants is a foreign entity or unincorporated association not subject to any state's courts general jurisdiction, and exercising jurisdiction is consistent with the United States Constitution and laws.

64.    Venue in the Western District of Pennsylvania is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events that give rise to the claim occur within this District, Defendants have committed acts of infringement in and have significant contacts within this District, and Defendants as delineated in Schedule A are directly targeting their business activities of offering to sell, selling, and shipping the Infringing Products to this District.

65.    In addition, based on information found on Defendants' Infringing Product listings and based on the Seller Aliases themselves, each of the Defendants is a foreign entity or individual,

and "a defendant not resident in the United States may be sued in any judicial district." 28 U.S.C.

§ 1391(c)(3).


## COUNT I
## <u>INFRINGEMENT OF PLAINTIFF'S PATENT</u>
## <u>(35 U.S.C. §271(a))</u>

66.      Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in

the preceding paragraphs.

67.      Defendants, as delineated in Schedule A, directly or through intermediaries, offer

to sell, sell, and ship products which infringe Plaintiff's Patent. *See* **Exhibit D**.

68.      Defendants, as delineated in Schedule A, are making, using, offering for sale,

selling, and/or importing into the United States, and Pennsylvania, for subsequent sale or use,

Infringing Products that infringe directly and/or indirectly infringe the claim of Plaintiff's Patent.

*See* **Exhibit D**.

69.      Defendants, as delineated in Schedule A, are directly infringing, literally infringing,

and/or infringing the claim of Plaintiff's Patent under the doctrine of equivalents. *See* **Exhibit D**.

70.      Defendants, as delineated in Schedule A, have been and are now actively infringing

the claim of Plaintiff's Patent in the State of Pennsylvania, in this judicial district, and other

jurisdictions in the United States by selling or offering to sell the infringing Plaintiff's Patent

products. *See* **Exhibit D**.

71.      Defendants' offering for sale, sale, and shipments of Infringing Products have

caused and continues to cause Plaintiff to suffer irreparable harm through loss of Plaintiff's

exclusive patent rights, loss of market share, loss of future profits, loss of reputation, and inability

to realize a return on investment.

72.     Defendants' offering for sale, sale, and shipment of Infringing Products into the United States, and Pennsylvania, was willful in nature based upon the history of the Plaintiff's Patent, Defendants' actual or constructive knowledge of the Plaintiff's Patent, the significant popularity of the Plaintiff's Patent products, and the anonymous nature of Defendants.

**COUNT II**
**TRADEMARK INFRINGEMENT AND COUNTERFEITING OF PLAINTIFF'S MARK**
**(15 U.S.C. § 1114)**

73.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

74.     Plaintiff's Mark is distinctive. Consumers have come to expect the highest quality from Plaintiff's products offered, sold, or marketed under Plaintiff's Mark.

75.     Defendants, as delineated in Schedule A, have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of Plaintiff's Mark without Plaintiff's permission. *See* **Exhibit D**.

76.     Plaintiff is the exclusive owner of Plaintiff's Mark. The United States Registration for Plaintiff's Mark is in full force and effect. On information and belief, Defendants have knowledge of Plaintiff's rights in Plaintiff's Mark and are willfully infringing and intentionally using counterfeits of Plaintiff's Mark. Defendant's willful, intentional, and unauthorized use of Plaintiff's Mark is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Infringing Products among the general public.

77.     Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

16

78.    Plaintiff has no adequate remedy at law, and if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill associated with Plaintiff's Mark.

79.    The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Infringing Products.

**COUNT III**
**INFRINGEMENT OF PLAINTIFF'S COPYRIGHT**
**(17 U.S.C. § 501)**

80.    Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

81.    Plaintiff has complied in all respects with the Copyright Act of the United States and other laws governing copyright and secured the exclusive rights and privileges in and to Plaintiff's Copyright.

82.    Under 17 U.S.C. § 106, Plaintiff has the exclusive rights and privileges to reproduce, prepare derivative works, distribute copies, and import copies into the United States of the Plaintiff's Copyright.

83.    Defendants, as delineated in Schedule A, infringed Plaintiff's exclusive copyrights by creating infringing and derivative works, copying, displaying, and/or distributing works to the public based upon Plaintiff's copyrighted works in violation of 17 U.S.C. § 106, as seen in **Exhibit D**.

84.    Due to Defendants' infringing behavior as alleged herein, Defendants, as delineated on Schedule A, have obtained direct and indirect profits they would not otherwise have realized but for their infringement of Plaintiff's Copyrights.

85.    Defendants, as delineated in Schedule A, have been and are now actively infringing the Plaintiff's Copyright in the State of Pennsylvania, in this judicial district, and other jurisdictions in the United States by offering to sell, selling, and advertising products utilizing Plaintiff's Copyright.

86.    Defendants' conduct constitutes willful and direct copyright infringement. The virtually identical nature between Plaintiff's Copyright and the Infringing Products sold by Defendants, the anonymous nature of Defendants, and dated history of Plaintiff further evidences the willful and direct infringement by Defendants.

87.    Due to Defendants', and each of their, acts of infringement, Plaintiff has actually and proximately suffered actual, general, and special damages in an amount to be established at trial under 17 U.S.C. § 504(b) and (c).

88.    The harm caused to Plaintiff is irreparable.

89.    Plaintiff is informed and believes and thereon alleges that Defendants, and each of their, conduct as alleged herein was willful, reckless, and/or with knowledge.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against Defendants as follows:

a. Entry of temporary, preliminary and permanent injunctions pursuant to 35 U.S.C. § 283, 15 U.S. Code § 1116, 17 U.S.C.§ 502(a), and Federal Rule of Civil Procedure 65 enjoining Defendants, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell their Infringing Products.

b. Entry of an Order that, upon Plaintiff's request, any Internet marketplace website operators and/or administrators that are provided with notice of the injunction, including but not limited to the online marketplaces Amazon.com, aliexpress.com, eBay.com, Joybuy, Temu, Walmart.com, and wish.com, identify any e-mail address known to be associated with Defendants' respective Seller ID, and cease facilitating access to any or all e-commerce stores through which Defendants engage in the promotion, offering for sale, and/or sale of Infringing Products.

c. Entry of an Order that, upon Plaintiff's request, any Internet marketplace website operators and/or administrators who are provided with notice of the injunction, including but not limited to the online marketplaces Amazon.com, aliexpress.com, eBay.com, Joybuy, Temu,Walmart.com, and wish.com, permanently remove any and all listings offering for sale Infringing Products via the e-commerce stores operating under the Seller IDs, including any and all listings linked to the same seller or linked to any other alias seller identification name being used and/or controlled by Defendants to promote, offer for sale and/or sell Infringing Products.

d. Entry of an Order that, upon Plaintiff's request, any Internet marketplace website operators and/or administrators who are provided with notice of the injunction, including but not limited to the online marketplaces Amazon.com, aliexpress.com, eBay.com, Joybuy, Temu, Walmart.com, and wish.com, immediately cease fulfillment of and sequester all goods of each Defendant or other Seller under a Seller ID offering for sale the Infringing Product in its inventory, possession, custody, or control, and surrender those goods to Plaintiff.

e. Entry of an Order awarding Plaintiff damages adequate to compensate for the infringement of its patent, but in no event less than a reasonable royalty for the use made of the invention by the Defendants, together with interest and costs as fixed by the Court pursuant to 35 U.S.C. § 284 and that the award be trebled as provided for under 35 U.S.C. §284.

f. In the alterative, Entry of an Order awarding Plaintiff all profits realized by Defendants from Defendants' infringement of Plaintiffs' Patent, pursuant to 35 U.S.C. § 289.

g. Entry of an Order requiring each Defendant account for and pay to Plaintiff all profits realized by each Defendant by reason of each Defendant's unlawful acts herein alleged, and that the amount of damages for infringement of Plaintiff's Mark be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117.

h. In the alternative, Entry of an Order that Plaintiff be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each use of Plaintiff's Mark.

i. Entry of an Order requiring Defendants to account to and pay Plaintiff actual damages and/or Defendants' profits attributable to the infringement, or, at Plaintiff's election, statutory damages, as provided in 17 U.S.C. § 504, for infringement of Plaintiff's Copyright.

j. Entry of an Order finding that this case is exceptional and an award to Plaintiff its attorney fees and costs as provided by for under 35 U.S.C. § 285, 17 U.S.C. § 505, and 15 U.S.C. § 1117.

k. Entry of an Order that, upon Plaintiff's request, any financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, and their related companies and affiliates, identify and restrain all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with the Seller IDs or other domain names, alias seller identification names, or e-commerce store names or store URLs used by Defendants presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution account(s), to be surrendered to Plaintiff in partial satisfaction of the monetary judgment entered herein.

l. Entry of an award of pre- and post-judgment interest on the judgment amount.

m. Entry of an order for any further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

DATED April 10, 2025                        Respectfully submitted,

                                            /s/ Ge (Linda) Lei
                                            Ge (Linda) Lei
                                            Getech Law LLC
                                            203 N. LaSalle St., Suite 2100,
                                            Chicago, IL 60601
                                            Attorney No.
                                            E: Linda.lei@getechlaw.com
                                            P: 312-888-6633

                                            *ATTORNEY FOR PLAINTIFF*